* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner, as described herein.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. All parties have been correctly designated.
3. Defendant Fireman's Fund Insurance Company was the carrier on the risk.
4. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
5. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on May 1, 2002, while working on a piece of property being logged by defendant-employer when he stepped onto a tree trunk, lost his footing, and fell in an awkward, twisting manner, with his left foot going forward and his right foot going backward, his right leg bent. Plaintiff came down hard on top of his right knee, which went straight down into the log, injuring the right knee.
6. Plaintiff's right to compensation was admitted on a Form 60 dated September 9, 2002, pursuant to N.C. Gen. Stat. § 97-18(b), and was modified on a Form 62 dated May 13, 2004.
7. Plaintiff's average weekly wage is in dispute. Plaintiff contends that his average weekly wage is $868.14 or greater. Defendants contend the average weekly wage is $704.45, resulting in a weekly compensation rate of $469.66.
8. Defendant-carrier initiated the payment of temporary total disability benefits to plaintiff for the 22-week period of August 13, 2002, through January 12, 2003, at the weekly compensation rate of $414.01. On April 1, 2004, defendant-carrier issued a check in the amount of $1,224.00 for "underpayment for TTD rec'd Form 22," which paid a difference of $55.65 per week for said period.
9. The issues for determination are:
a. Plaintiff's average weekly wage.
 b. Whether plaintiff is entitled to the approval of vocational rehabilitation services, including further education.
 c. Whether plaintiff is entitled to temporary total disability benefits from June 1, 2002, the initial date of plaintiff's alleged disability due to compensable injury, through August 13, 2002, the date of plaintiff's surgery and defendants' initial payment of benefits.
 d. Whether plaintiff is entitled to reinstatement of benefits and payment of late payment penalties and sanctions following defendants' termination of benefits on January 13, 2003.
 e. Whether plaintiff is entitled to temporary partial disability compensation beginning on February 7, 2003, when plaintiff obtained employment at reduced wages.
 f. Whether plaintiff is entitled to permanent partial disability benefits pursuant to the rating he received on his right knee.
10. The parties stipulated into evidence the following documentary evidence:
 a. Stipulated Exhibit #1, Part 1 and 2: I.C. forms, motions, medical records, wage records, compensation payments.
b. Stipulated Exhibit #2: Wage statement
c. Stipulated Exhibit #3: Benefits statement
d. Stipulated Exhibit #4: Defense correspondence
 * * * * * * * * * * *
Based upon all of the competent evidence of the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old. He began his employment with defendant-employer on April 1, 1999, as a timber buyer, earning $33,000.00 yearly plus commissions. Plaintiff estimated that he worked approximately 50 to 55 hours per week.
2. Plaintiff's employment involved scouting properties, walking properties to define areas to cut timber, measuring trees, negotiating prices, and performing title searches on prospective properties.
3. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on May 1, 2002. While working on a piece of property being logged by defendant-employer, plaintiff stepped onto a tree trunk, lost his footing, and fell in an awkward, twisting manner. He came down hard on top of his right knee which went straight down into the log, injuring his right knee.
4. Immediately following his injury, plaintiff was able to continue working on the property being logged, despite the fact that the knee was "just aching all the time and the twisting and the gritty feeling to it. It wasn't the same knee anymore." Plaintiff did not seek immediate medical treatment for his knee, hoping that the pain would naturally resolve itself.
5. After a week had passed, and because plaintiff was still experiencing "aching and swelling, burning pain, stiffness" in his knee, plaintiff sought medical treatment for his knee. On May 7, 2002, plaintiff presented to Dr. Edward F. Hill with complaints of chronic rhinitis and right knee pain. Plaintiff was diagnosed as having a mild knee strain.
6. Plaintiff's knee pain became progressively worse over the following weeks to the point that, by May 31, 2002, plaintiff was physically incapable of performing the regular and essential duties of a timber buyer. As plaintiff testified, and the Full Commission finds as fact, "the pain was just getting increasingly worse. It was harder to walk. Crawling was not an option. The more time on the leg, the more pain and the swelling."
7. Plaintiff had been notified by defendant-employer in April 2002 that he would be laid off from employment at the end of May 2002 due to the loss of a major contract. Accordingly, plaintiff's last day of work for defendant-employer was May 31, 2002. Plaintiff thereafter received unemployment benefits from June 2002 through August 2002, and again from December 2002 until February 2003.
8. On June 5, 2002, plaintiff returned to Dr. Hill with continuing complaints of knee pain, and was referred to orthopedist Dr. Scott Hannum. Plaintiff presented to Dr. Hannum on June 17, 2002. Dr. Hannum ordered an MRI, the results of which suggested a torn medial meniscus. On July 10, 2002, Dr. Hannum wrote plaintiff out of work due to his injury by accident. Surgery was recommended and performed on August 13, 2002.
9. While he was recovering from his August 13, 2002, knee surgery, plaintiff began taking courses at Beaufort County Community College, working toward a two-year associate's degree in electrical engineering technology. The record does not include any evidence that plaintiff consulted a rehabilitation professional concerning the necessity or appropriateness of such retraining in light of his particular injury and work history.
10. Following his surgery, plaintiff continued to follow up with Dr. Hannum. On December 2, 2002, Dr. Hannum opined that plaintiff had reached maximum medical improvement, noting that plaintiff had reached "his chronic state." Although he opined that the Industrial Commission Guide for Impairment did not really provide for an accurate rating of plaintiff's condition, Dr. Hannum rated plaintiff as having a 7% permanent partial disability to his right knee at that time, and released plaintiff to return to work without restrictions.
11. Dr. Hannum further opined that plaintiff could have returned to his previous occupation as a timber buyer had there been work available. However, returning to such work likely would have given him a hard time. As Dr. Hannum testified,
 I would have let him try it and see how he did. But, yes, I would have said look, you need to be careful; you need to use good common sense; you need to wear a good pair of shoes; you need to — you know, if people can help you out on the job where you don't have to put yourself or your knee at risk, you'd be better off. You know, again, seeing a lot of different people all the time, I can't always control what people do for a living to make — to make a living and make ends meet.
In addition, Dr. Hannum opined, and the Full Commission finds as fact, that plaintiff's injury and subsequent knee surgery placed him at significant risk of developing post-traumatic arthritis and of requiring further knee surgery in the future.
12. On May 24, 2004, plaintiff presented to orthopedist Dr. Gilbert Whitmer for a second opinion regarding his permanent impairment rating. Dr. Whitmer rated plaintiff as having a 12% permanent partial disability rating to his right knee. On July 27, 2004, plaintiff presented to orthopedist Dr. Kevin Speer for an additional opinion regarding the rating. Dr. Speer also opined that plaintiff's proper rating was 12%. Both Dr. Whitmer and Dr. Speer also assigned permanent restrictions to plaintiff's activities, including that plaintiff avoid lifting or carrying over 30 pounds, excessive squatting, kneeling, crawling, and stair or ladder climbing.
13. Upon review of the conclusions of Dr. Whitmer and Dr. Speer, Dr. Hannum concurred, and the Full Commission finds as fact, that their ratings and permanent restrictions of plaintiff's activities were reasonable.
14. Following his release by Dr. Hannum, plaintiff believed, and the Full Commission finds as fact, that plaintiff was physically unable to perform the duties of the job of timber buyer as a result of his injury at the time he was released by Dr. Hannum on December 2, 2002. On or about February 7, 2003, plaintiff finally obtained other employment at reduced wages through a temporary employment agency, and subsequently obtained permanent employment through another employer at the same wage.
15. The Full Commission finds, based on the greater weight of the evidence before it, that plaintiff was totally incapacitated from work due to his compensable injury by accident from June 1, 2002, the date plaintiff ceased working for defendant-employer, until February 7, 2003, the day plaintiff once again became employed.
16. The Full Commission further finds, based on the greater weight of the evidence before it, that plaintiff's decrease in wage earning following his February 7, 2003, employment is due to reasons directly related to his compensable injury by accident.
17. The record includes a Form 22 that purports to show plaintiff's earnings from July 2001 through May 2002. However, in addition to failing to describe plaintiff's earnings for May 2001 (which would be required to compute plaintiff's earnings for the 52 weeks prior to his May 1, 2002 injury), the Form 22 lists earnings for each month in 2001 of $2750, apparently derived through division by 12 of plaintiff's base annual salary of $33,000. Because plaintiff also received quarterly and annual commissions from defendant-employer on the timber he bought, and because plaintiff's W-2 for 2001 shows total income for the year of $45,143.14, the Full Commission concludes that the Form 22 submitted by defendants is incomplete and is therefore insufficient to determine plaintiff's weekly wage, at least in regard to plaintiff's earnings in 2001.
18. The Full Commission therefore finds it fair and just to both parties, and necessary due to the absence of additional evidence in the record regarding plaintiff's weekly earnings during 2001, to calculate plaintiff's earnings from May 1, 2001, through December 31, 2001, as a pro rata share of plaintiff's total earnings from 2001 as reported on his W-2 form. Accordingly, the Full Commission finds that plaintiff earned $30,095.43 from defendant-employer during the period of May 1, 2001, through December 31, 2001.
19. The Form 22 submitted by defendants, together with the evidence of record concerning commissions awarded to plaintiff, indicate that plaintiff earned $19,239.27 during the period of January 1, 2002, through April 30, 2002, including both salary and commissions earned prior to plaintiff's injury by accident.
20. The Full Commission accordingly finds that plaintiff earned $49,334.70 during the 52 weeks prior to his May 1, 2002, injury by accident, resulting in an average weekly wage of $948.74 and a compensation rate of $632.50.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on May 1, 2002. N.C. Gen. Stat. §97-2(6).
2. Plaintiff's average weekly wage at the time of his injury by accident was $948.74, yielding a compensation rate of $632.50 per week. N.C. Gen. Stat. § 97-2(5).
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $632.50 per week beginning on June 1, 2002, when his employment with defendant-employer ended, and continuing through February 7, 2003, when plaintiff began new employment. N.C. Gen. Stat. §97-29.
4. Plaintiff is further entitled to temporary partial disability compensation at the rate two-thirds of the difference between plaintiff's pre-injury Average Weekly Wage of $948.74 and the reduced weekly wage earned following his February 7, 2003, employment, from February 7, 2003, for the remainder of the 300 weeks following plaintiff's injury by accident. N.C. Gen. Stat. §97-30. This compensation is in lieu of permanent partial disability compensation pursuant to N.C. Gen. Stat. § 97-31. SeeGupton v. Builders Transport, 320 N.C. 38, 42, 357 S.E.2d 674,678 (1987) ("[A] claimant who is entitled to benefits under either N.C.G.S. 97-31 or N.C.G.S. 97-30 may select the more munificent remedy.")
5. Defendants are entitled to an offset against the amount owed to plaintiff in indemnity compensation for unemployment benefits received by plaintiff during the period of disability, in accordance with N.C. Gen. Stat. § 97-42.1. Defendants are further entitled to an offset for any payments already provided to plaintiff for temporary total disability, or for permanent partial disability provided pursuant to the Deputy Commissioner's prior Opinion and Award under N.C. Gen. Stat. § 97-31(15).
6. Because plaintiff sought vocational rehabilitation, in the form of enrollment in an associate degree program at Beaufort County Community College, without the advice or guidance of a certified rehabilitation professional acting under the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims, the Full Commission finds insufficient basis in the record on appeal to require defendant to compensate plaintiff for such vocational rehabilitation costs at this time. N.C. Gen. Stat. § 97-25.5.
7. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. §97-2(19).
8. Since the Industrial Commission has found that there is a substantial risk of the need for future medical treatment, the commission is ordering that future medical compensation shall be paid by defendants. N.C. Gen. Stat. § 92-25.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $632.50 per week beginning on June 1, 2002, and continuing through February 7, 2003. Defendants shall be entitled to a credit for amounts paid during this period at a lesser rate, and for any unemployment received by plaintiff during this period.
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary partial disability compensation to plaintiff at the rate of 2/3 of the difference between plaintiff's pre-injury weekly wage of $948.74 and his post-injury reduced weekly wage, beginning on February 7, 2003, and continuing for the remainder of the 300 weeks following plaintiff's May 1, 2001, injury by accident. Defendants shall be entitled to a credit for any amounts paid to plaintiff for permanent partial disability compensation pursuant to the Deputy Commissioner's prior Opinion and Award.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved, to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendants shall pay medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability, in accordance with the provisions of the Act. Since the Industrial Commission has found that plaintiff's injury and subsequent knee surgery have placed him at significant risk of developing post-traumatic arthritis and of requiring further knee surgery in the future, defendants must furnish medical treatment for these as well.
5. Defendants shall pay the costs.
This 15th ___ day of May, 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN